## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CIELO JEAN GIBSON, EMILY SCOTT, JENNIFER ARCHULETA, JENNIFER ZHARINOVA, JESSICA BURCIAGA, TIFFANY TOTH-GRAY, KIM COZZENS, URSULA YVONNE SANCHEZ, A/K/A URSULA MAYES, *Plaintiffs*, <br><br> v. <br><br> METROPOLIS OF CT LLC D/B/A MARDI GRAS 2, HELEN SANTANIELLO, *Defendants*. | 19-cv-00544 (KAD) <br><br><br><br> February 27, 2020 |

## MEMORANDUM OF DECISION
## RE: DEFENDANTS' MOTION TO DISMISS (ECF NO. 29)

Kari A. Dooley, United States District Judge:

Plaintiffs Cielo Jean "CJ" Gibson ("Gibson"), Emily Scott ("Scott"), Jennifer Archuleta ("Archuleta"), Jennifer Zharinova ("Zharinova"), Jessica Burciaga ("Burciaga"), Tiffany Toth-Gray ("Toth"), Kim Cozzens ("Cozzens"), and Ursula Yvonne Sanchez a/k/a Ursula Mayes ("Mayes," and, collectively, the "Plaintiffs") filed this suit against Defendants Metropolis of Connecticut LLC d/b/a Mardi Gras 2 and Helen Santaniello (collectively, the "Defendants") on April 11, 2019. Plaintiffs allege that Defendants unlawfully misappropriated, altered, and published images of the Plaintiffs, who are all professional models, in advertisements for Defendants' strip club in East Windsor, Connecticut. Their initial complaint (ECF No. 1) asserted claims under the Lanham Act and the Connecticut Unfair Trade Practices Act ("CUTPA"), as well as various common law tort claims. On August 13, 2019, Defendants moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that all of the Plaintiffs' claims are

barred by the applicable statutes of limitations.  (ECF No. 17.)  On September 3, 2019, Plaintiffs concurrently filed a First Amended Complaint (the "FAC," ECF No. 25), in which Plaintiffs reallege the same claims asserted in the original complaint, and an opposition to Defendants' motion to dismiss in which Plaintiffs argue that the FAC cures the original complaint's alleged deficiencies.  (ECF No. 24.)  Defendants filed a renewed motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) on September 20, 2019 in which they repeat their statute of limitations arguments.  (ECF No. 29.)  Plaintiffs filed an opposition to the motion on October 18, 2019.  (ECF No. 36.)  Defendants thereafter filed a reply brief on October 28, 2019.  (ECF No. 37.)

For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

**Standard of Review**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the complaint's factual allegations as true and must draw inferences in the plaintiff's favor.  *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).  A motion filed pursuant to "Rule 12(b)(6) must be decided on 'facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.'"  *Lunardini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d 149, 155 (D. Conn. 2010) (quoting *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (brackets omitted).  The "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Accordingly, 'threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted).

"While a statute of limitations defense is most often pleaded as an affirmative defense and may require a factual inquiry beyond the face of the complaint, a defendant may raise the statute of limitations in a Rule 12(b)(6) motion where the dates in a complaint show that an action is barred by a statute of limitations." *Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007) (quotation marks, alterations, and citation omitted). However, "[w]here . . . a complaint does not demonstrate facial infirmity with respect to the statute of limitations, a motion to dismiss on this ground must fail." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (quotation marks and citation omitted). "In short, a motion to dismiss may be granted if a complaint's allegations affirmatively establish an action's untimeliness, but it may not be granted simply because a complaint failed to include allegations affirmatively establishing its timeliness." *Id.* (quoting *Slainte Investments Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 253–54 (D. Conn. 2015)).

Finally, while "once an amended complaint has been filed, it supersedes the original complaint," *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 21 (D. Conn. 2013), "the Court may still credit admissions in the original complaint and attached exhibits," *Fiorillo v. United Techs. Corp.*, No. 3:13-CV-1287 (VLB), 2015 WL 5797010, at *1 (D. Conn. Sept. 30, 2015) (quotation marks and citation omitted). Here both parties' motions, as well as the FAC itself, refer to Exhibits A-H to Plaintiffs' original complaint (ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8), which were not attached to the FAC, and the Court will accordingly consider these exhibits in ruling on the motion to dismiss.

**Allegations**

The following facts are taken from the FAC and exhibits to the original complaint and are accepted as true for purposes of the motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Plaintiffs are all well-known professional models who reside throughout the United States, except for Scott, who resides in Australia. (FAC ¶¶ 10–17.) Defendant Metropolis of Connecticut LLC ("Metropolis") is a Connecticut corporation that operates a strip club called "Mardi Gras 2" in East Windsor, CT. (*Id.* ¶¶ 6, 18.) Defendant Helen Santaniello ("Santaniello") resides in Massachusetts "and at all relevant times was the owner, principal and/or chief executive officer of Metropolis." (*Id.* ¶ 7.) In such capacity Santaniello oversees all of the advertising for Mardi Gras 2 ("Mardi Gras," or the "Club"). (*Id.* ¶ 19.)

Plaintiffs earn a living by licensing their images for advertising purposes and are necessarily selective in choosing the products and companies for which they model in order to establish and maintain the integrity and viability of their individual brands. (*Id.* ¶¶ 20–23.) Each of the Plaintiffs has been featured in some combination of magazine spreads and/or covers, television spots, music videos, and other entertainment or advertising campaigns. (*Id.* ¶¶ 35, 38, 41, 44, 47, 50, 53, 56.) In all instances in which Plaintiffs' images are used for commercial marketing, Plaintiffs negotiate and grant permission for such use pursuant to mutually agreed-upon terms and conditions and consideration. (*Id.* ¶ 24.)

Defendants misappropriated Plaintiffs' images and intentionally altered and published them to make it appear as though Plaintiffs worked at Mardi Gras or otherwise sponsored or promoted the Club in order to attract clientele, even though no Plaintiff has ever worked at or been affiliated with Mardi Gras and Plaintiffs did not consent to such use of their images or receive compensation from the Defendants. (*E.g.*, *id.* ¶¶ 25–27, 32, 71–76, 82–86.) Specifically,

Defendants unlawfully used Plaintiffs' images in promotions posted on the Club's Facebook or Instagram pages on the following dates:

- On February 1, 2015, Defendants posted an image of Gibson as part of an advertisement for the Club's Superbowl specials. Defendants posted similar images of Gibson in connection with advertisements promoting Sunday and Monday night football viewings at Mardi Gras in August and September 2013. (Compl. Ex A (cited in FAC ¶ 36).)

- On March 14, 2014, Defendants posted an image of Scott in connection with an advertisement for the Club's St. Patrick's Day drink specials. (Compl. Ex. B (cited in FAC ¶ 39).)

- On July 4, 2014, Defendants posted an image of Archuleta as part of an advertisement for the Club's Fourth of July specials. (Compl. Ex. C (cited in FAC ¶ 42).)

- On October 22, 2012, Defendants posted an image of Zharinova in connection with a Mardi Gras Halloween advertisement. (Compl. Ex. D (cited in FAC ¶ 45).)

- On May 23, 2014, Defendants posted an image of Burciaga as part of an advertisement for the Club's Memorial Day Weekend specials. Defendants also posted an image of Burciaga on February 3, 2015 in connection with a promotion for a "Spring Break Beach Party" at Mardi Gras. (Compl. Ex. E (cited in FAC ¶ 48).)

- On December 14, 2012, Defendants posted an image of Cozzens in an advertisement for the Club's "Annual Holiday Party." (Compl. Ex. F (cited in FAC ¶ 51).)

- Defendants posted an image of Toth to promote an "XXXmas in July Party" at the Club occurring on July 25, 2013. (Compl. Ex. G (cited in FAC ¶ 54).)

- On August 14, 2013, Defendants posted an image of Mayes to promote a "Back to School" event at Mardi Gras occurring on September 13, 2013. (Compl. Ex. H (cited in FAC ¶ 57).)

Plaintiffs further allege that "Defendants' unauthorized use . . . was continuous and ongoing insofar as the infringing and false advertisements remained up for months and/or years after their original publication," (*e.g.*, FAC ¶ 29) and that they have been substantially injured in their careers as a result. (*Id.* ¶¶ 79–80.)

Plaintiffs bring claims of false advertising and false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), (a)(1)(A), respectively (Counts One and Two); common law invasion of privacy—appropriation of likeness and false light (Counts Three and Four, respectively); CUTPA

violations, Conn. Gen. Stat. § 42-110b (Count Five); defamation (Count Six); negligence and *respondeat superior* (Count Seven); conversion (Count Eight); unjust enrichment (Count Nine); and *quantum meruit* (Count Ten). Defendants seek dismissal of all claims on the ground that each is untimely insofar as all instances of Defendants' alleged unlawful use and publication of Plaintiffs' images occurred on or before February 3, 2015 (*see* Compl. Ex. E) and thus fall outside of any applicable statute of limitations.[1]

## Discussion

### Lanham Act – Counts One and Two

The Lanham Act provides in relevant part that:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B).

The Lanham Act "contains no statute of limitations" but, rather, "expressly provides for defensive use of 'equitable principles, including laches.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*,

---

[1] Defendants note that certain of Plaintiffs' exhibits do not include a posting date but, rather, convey an undated promotion for an event occurring on a specific date. In such instances, construing the allegations in the light most favorable to Plaintiffs, the Defendants assume *arguendo* that the event date may be treated as the applicable date for statute of limitations purposes, though they recognize as a practical matter that the event date would normally tend to be later in time than the date of the corresponding advertisement. (*See* Defs.' Mem. at 4–5.)

572 U.S. 663, 678 n.15 (2014) (quoting 15 U.S.C. § 1115(b)(9)).  A defendant asserting a laches

defense must establish that: "1) the plaintiff had knowledge of the defendant's use of its mark; 2)

the plaintiff inexcusably delayed taking action with respect to that use; and 3) the defendant would

be prejudiced if the court permitted the plaintiff to assert its rights belatedly." *RBC Nice Bearings,

Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 24 (D. Conn. 2009), *aff'd*, 410 Fed. App'x 362 (2d

Cir. 2010) (quotation marks and citation omitted).  In addition, in Lanham Act cases, "the Second

Circuit looks to 'the most appropriate or the most analogous state statute of limitations'" to

ascertain whether the equitable defense of laches bars the plaintiff's claim.  *Mashantucket Pequot

Tribe v. Redican*, 403 F. Supp. 2d 184, 198 (D. Conn. 2005) (quoting *Conopco, Inc. v. Campbell

Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)).  "If the most closely analogous state statute of

limitations has not run, the presumption of laches does not attach and the defendant bears the

burden of proving the defense.  But once the analogous state statute of limitations has run, the

burden shifts to the plaintiff to show why laches should not apply."  *Fed. Treasury Enter.

Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 746 (2d Cir. 2016) (internal citation omitted).

As such, courts do not "'apply' statutes of limitations to Lanham Act claims, but . . . only . . . use

them by analogy" to determine who bears the burden of proof.  *CSL Silicones Inc. v. Midsun Grp.

Inc.*, No. 3:14-CV-01897 (CSH), 2016 WL 3566188, at *3 (D. Conn. June 27, 2016).

Because Lanham Act violations involve, *inter alia*, "any false designation of origin, false

or misleading description of fact, or false or misleading representation of fact," 15 U.S.C. §

1125(a)(1), Connecticut's three-year statute of limitations for fraud claims is the most closely

analogous statute of limitations.  *See, e.g.*, *Stuart v. Freiberg*, 316 Conn. 809, 821, 116 A.3d 1195

(2015) (explaining that "[t]o establish liability for fraud, a plaintiff must be able to show," among

other elements, that "a false representation was made by the defendant as [to] a statement of fact")

(brackets omitted); *see also RBC Nice Bearings*, 676 F. Supp. 2d at 25; *Argus Research Grp., Inc. v. Argus Media, Inc.*, 562 F. Supp. 2d 260, 273 (D. Conn. 2008). Although the Court looks to state law to determine the analogous statute of limitations, federal law determines when a Lanham Act claim accrues. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("In a federal question case . . . when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues."). "Under federal law, a cause of action generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, No. 06-CV-1260 (CBA), 2008 WL 3334032, at *4 (E.D.N.Y. Aug. 8, 2008) ("[I]n false advertising claims brought under the Lanham Act, the plaintiff's injury accrues when the plaintiff knew or had reason to know of its injury").

Here, Defendants assert in a conclusory fashion that because Plaintiffs allege a most recent publication date of February 3, 2015, Plaintiffs' failure to bring suit prior to February 3, 2018 renders their Lanham Act claims time barred. This argument is meritless and simply assumes an accrual date identical to the publication date. But it is not at all clear from the allegations of the FAC or from the exhibits attached to the original complaint at what point Plaintiffs knew or had reason to know of their alleged harm so as to trigger the running of the statute of limitations. *See Slainte Investments*, 142 F. Supp. 3d at 253–54 ("a motion to dismiss . . . may not be granted simply because a complaint failed to include allegations affirmatively establishing its timeliness."). Indeed, the date appearing in either the upper-right or upper-left corner of the exhibits attached to the complaint reads "January 19, 2019," (*see* Compl. Exs. A–H) which raises an inference that

Plaintiffs may have learned of these postings several years after their publication. Such an inference is further supported by the fact that the original complaint was filed approximately three months later in April 2019. Because the date that the Lanham Act claims accrued is not clear on the face of the FAC, the Court cannot answer the threshold inquiry of whether the analogous statute of limitations has run or accordingly, whether the presumption of laches applies. *See Gristede's Foods*, 2008 WL 3334032, at *4 (denying motion to dismiss Lanham Act claims on statute of limitations grounds even where the complaint alleged conduct that potentially fell outside the limitations period, as the plaintiff "may not have been reasonably aware of its injury until a later date"). Moreover, even if this determination was possible, it resolves only the question of who bears the burden of proof; it does not answer the ultimate question of whether laches bars the Plaintiffs' claims. "[L]aches is a fact-based inquiry" and for that reason, "courts rarely resolve the issue at the pleading stage." *CSL Silicones Inc. v. Midsun Grp. Inc.*, 170 F. Supp. 3d 304, 317 n.11 (D. Conn. 2016). The Defendants' motion to dismiss is denied as to Counts One and Two.[2]

### Plaintiffs' State Law Claims

Defendants also assert that the Plaintiffs' state law claims are time-barred. As noted previously, February 3, 2015 is the latest date alleged in the FAC on which Defendants' unlawfully posted an image of one of the Plaintiffs. (FAC ¶ 48; Compl. Ex. E.) This action was not filed until April 11, 2019—over four years later. Defendants accordingly argue that all of Plaintiffs' tort and statutory claims are time-barred, because they are subject to either a two-year or three-year statute of limitations. Plaintiffs do not analyze these claims in the context of the distinct statutes of limitation applicable to each claim. Instead, they argue as a general matter that dismissal

---

[2] The Court need not resolve Plaintiffs' alternative argument that Defendants "intentionally" misappropriated Plaintiffs' images and are therefore precluded from asserting a laches defense at all due to their unclean hands. *See, e.g.*, *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000).

at this stage is inappropriate because "Plaintiffs allege an advertising scheme by Defendants . . . that is unapologetic, chronic and habitual" and that even if "Defendants hatched and initially implemented this scheme at a point in time outside the applicable limitations period, such course of conduct unquestionably continued into the limitations period . . . ." (Pls.' Mem. at 6.) Plaintiffs thus argue that the "continuing course of conduct" doctrine tolls the statutes of limitations, and that discovery is needed to determine the temporal contours of Defendants' wrongdoing.[3]

### *The Continuing Course of Conduct Doctrine*

"[W]hen the wrong sued upon consists of a continuing course of conduct," the continuing course of conduct doctrine provides that "the statute does not begin to run until that course of conduct is completed." *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 311, 94 A.3d 553 (2014) (quoting *Handler v. Remington Arms Co.*, 144 Conn. 316, 321, 130 A.2d 793 (1957)). "The doctrine 'reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied.'" *Slainte Investments*, 142 F. Supp. 3d at 258 (quoting *Martinelli v. Fusi*, 290 Conn. 347, 356, 963 A.2d 640 (2009)). In other words, the decision to render a "continuing" violation cognizable stems from the recognition that in certain cases "it would be unreasonable to require or even permit [the

---

[3] Plaintiffs also argue that they "have clearly averred that 'the manner in which Defendants posted and publicized their image[s] and likeness . . . was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) 'pushed' down in time from immediate visibility.'" (Pl.'s Mem. at 8; *see* FAC ¶¶ 119, 135, 181.) They thus contend that "any statute of limitations should be equitably tolled," because, "despite all due diligence [Plaintiffs were] unable to obtain vital information bearing on the existence of [their] claim." (Pl.'s Mem. at 8 (quoting *Valdez ex rel Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008)).) Plaintiffs do not otherwise develop their argument for equitable tolling. The Court does not find the allegations sufficient to warrant such tolling, which "is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Stearns v. Crossmark, Inc.*, No. 3:13-CV-01081 (JCH), 2014 WL 12871020, at *1 (D. Conn. June 24, 2014) (quotation marks and citation omitted); *accord Doe v. Grove Sch., Inc.*, No. CV-105033501, 2012 WL 1662510, at *1 (Conn. Sup. Ct. Apr. 24, 2012) (noting that "[t]he doctrine is to be applied sparingly" and requires the litigant to prove "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way") (quotation marks and citations omitted). Because no such allegations are pled, the Court does not address this argument further.

plaintiff] to sue separately over every incident of the defendant's unlawful conduct"—specifically, where "[t]he injuries about which the plaintiff is complaining . . . are the consequence of a numerous and continuous series of events." *Watts v. Chittenden*, 301 Conn. 575, 587–88, 22 A.3d 1214 (2011) (quoting *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001)). The doctrine would be inapplicable, by contrast, in a situation "in which repeated events give rise to discrete injuries, as in suits for lost wages" based on "repeated acts of wage discrimination," because there, "the damages from each discrete act of discrimination would be readily calculable without waiting for the entire series of acts to end." *Id.* at 588–89 (quoting *Heard*, 253 F.3d at 319–20).

Plaintiffs may properly invoke the doctrine upon a showing that "the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Flannery*, 312 Conn. at 313. At the second step, "a finding that a duty continued to exist after the cessation of the act or omission relied upon," must be established by "evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Id.* at 312 (quoting *Watts*, 301 Conn. at 584).

Here, while Plaintiffs have not pled specific facts identifying instances of Defendants' continuing wrongdoing, they allege that "Defendants' unauthorized use of Plaintiffs' Images was continuous and ongoing insofar as the infringing and false advertisements remained up for months and/or years after their original publication." (*E.g.*, FAC ¶ 29.) Plaintiffs further allege that Plaintiffs' images remained visible through Defendants' social media accounts beyond the dates on which they were posted, and that "Defendants' ongoing advertising scheme" did not end until "the date that they removed the last advertisement from their social media pages and/or websites." (*E.g.*, *id.* ¶¶ 30–31.) The Defendants argue that these allegations are insufficient to invoke the

continuing course of conduct doctrine, and urge this Court to apply the "single publication rule" as it was articulated by the Court of Appeals of New York:

> the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable statute of limitations runs from the date of that publication.

*Firth v. State*, 98 N.Y.2d 365, 369, 775 N.E.2d 463 (2002) (quotation marks, alterations, and citation omitted); *see also Hechtman v. Conn. Dep't of Pub. Health*, No. CV-094043516, 2009 WL 5303796, at *10 (Conn. Sup. Ct. Dec. 3, 2009) (adopting single publication rule in the context of an allegedly libelous Internet report). Defendants, however, cite no authority for applying this rule in such a sweeping fashion. They would extend the rule to not only Plaintiffs' defamation claims, but to all claims premised on the alleged unlawful posting of Plaintiffs' images. Instead, the question of the applicability of the continuing course of conduct doctrine, or the single publication rule, must be analyzed on a count by count basis.

### Invasion of Privacy – Counts Three and Four

"[T]he law of privacy has not developed as a single tort, but as a complex of four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff to be let alone." *Foncello v. Amorossi*, 284 Conn. 225, 234, 931 A.2d 924 (2007) (quoting *Goodrich v. Waterbury Republican–Am., Inc.*, 188 Conn. 107, 127–28, 448 A.2d 1317 (1982)). The four categories are: "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." *Id.* (quoting *Goodrich*, 188 Conn. at 128). Plaintiffs here allege two different types of invasion of privacy claims—appropriation of likeness and false light.

Though "[t]here is little case law on appropriation of likeness in Connecticut," the tort subjects a defendant to liability for "appropriat[ing] to his own use or benefit the name or likeness of another," and most commonly involves the "use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." *Beckner v. Connecticut Cmty. for Addiction Recovery, Inc.*, No. CV-095005324S, 2010 WL 4226736, at *21– *22 (Conn. Sup. Ct. Sept. 14, 2010) (quoting Restatement (Second), Torts § 652C (1977)). "The tort of false light 'protects one's interest in not being placed before the public in an objectionable false light or false position, 'or in other words, otherwise than as he is.'" *Belanger v. Swift Transp., Inc.*, 552 F. Supp. 2d 297, 301 (D. Conn. 2008) (quoting *Goodrich*, 188 Conn. at 131). "In order to prove a claim of false light, a plaintiff must show that '(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Id.* (quoting *Goodrich*, 188 Conn. at 131).

In Connecticut invasion of privacy claims are subject to the three-year statute of limitations set forth in Conn. Gen. Stat. § 52-577. *See, e.g.*, *Gallaher v. US Bank Nat'l Ass'n*, No. 3:14-CV-1877 (VLB), 2017 WL 2111593, at *12 (D. Conn. May 15, 2017). Section 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "This statute is occurrence-based," which means that the limitations period begins to run on the date that the tortious act occurred; "the accrual period cannot be delayed" even if the injury is not known until a later date. *Vossbrinck v. Eckert Seamans Cherin, & Mellott, LLC*, 301 F. Supp. 3d 381, 387 (D. Conn. 2018).

There is scant Connecticut case law discussing the continuing course of conduct doctrine as a basis for tolling invasion of privacy claims. While noting the absence of any such precedent,

one Superior Court judge concluded that the doctrine was inapposite to the plaintiffs' invasion of privacy claims, reasoning by analogy to the tort of defamation. *See Brady v. Bickford*, No. KNL-CV-116007541, 2015 WL 1727591, at *8 (Conn. Sup. Ct. Mar. 13, 2015) ("declin[ing] to apply the continuing course of conduct doctrine to the invasion of privacy claims," as "the categories of publicizing private facts and placing [the plaintiff] in a false light are like defamation in that each time the accusations were publicized, a new cause of action arose."). However, the court expressly declined to consider whether the doctrine could apply in an invasion of privacy claim premised upon an appropriation of likeness theory as it was not alleged. *See id.* at *7 n.5. And the facts pled bear no resemblance to those presented to the Superior Court in *Brady*. Here, Plaintiffs allege that Defendants exploited Plaintiffs' images and likeness for commercial gain and left Plaintiffs' images on the Club's social media pages "for months and/or years after their original publication." (FAC ¶¶ 29, 77, 114, 130, 176.) The Court is therefore not prepared to hold that Plaintiffs, cannot, as a matter of law, invoke the continuing course of conduct doctrine to toll the statute of limitations for their invasion of privacy claims.

As noted previously, in order to establish tolling under the continuing course of conduct doctrine, Plaintiffs need to demonstrate "either a special relationship between the parties giving rise to . . . a continuing duty or some later wrongful conduct of a defendant related to the prior act" of the publication of Plaintiffs' images. *Flannery*, 312 Conn. at 312 (quoting *Watts*, 301 Conn. at 584). Plaintiffs do not plead a special relationship. As to the subsequent wrongful conduct, the Plaintiffs allege that Defendants have profited from their advertising scheme for "months and/or years" after the original tortious act—the misuse of their images. When a tort not only causes injury to its victim, but also enriches the tortfeasor in an ongoing manner, the securing of those profits at the expense of the victim may be found to be subsequent wrongs that relate back to the

original harm for purposes of the doctrine. *Cf. Huang v. Hogeboom*, No. CV-065007649S, 2011 WL 2176914, at \*11 (Conn. Sup. Ct. May 6, 2011) (assuming *arguendo* that the execution of a quitclaim deed that occurred outside of the limitations period was the initiating event for purposes of Conn. Gen. Stat. § 52-577, and finding nonetheless that the defendant's subsequent refusal to tender payment for the victim's share of profits from a joint real estate venture gave rise to a continuing course of conduct sufficient to toll the statute of limitations where the parties had a special relationship). This principle is all the more pertinent, where, as here, the damages from such tortious conduct may not be "readily calculable," due to the ongoing nature of the violation. *See Watts*, 301 Conn. at 588.

The motion to dismiss is denied as to Count Three and Count Four.

The Court notes however, that to the extent the Plaintiffs rely upon the Defendants' failure to remove the images, the Court concludes that this failure does not constitute an independent wrongful act for purposes of the doctrine. *Cf. Evanston Ins. Co. v. William Kramer & Assocs., LLC*, 890 F.3d 40, 50 (2d Cir. 2018), *certified question answered sub nom. Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 205 A.3d 534 (2019) ("A later omission must be independently wrongful; mere failure to correct an earlier omission does not necessarily establish later wrongful conduct") (citing *Flannery*, 312 Conn. at 322). Indeed, in *Flannery*, the Connecticut Supreme Court rejected what it characterized as the plaintiff's "request[] that the three year statutes of limitations be tolled, indefinitely, on the basis of his former attorney's ongoing failure to confess his earlier tortious act," citing a case from the D.C. Circuit Court of Appeals for the proposition that "the mere failure to right a wrong and make the plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would

obliterate the rule." *Flannery*, 312 Conn. at 321–22 (quoting *Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977)) (brackets omitted).

### CUTPA – Count Five

"CUTPA, as codified in section 42-110b(a) prohibits 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn.), *aff'd*, 666 Fed. App'x 84 (2d Cir. 2016) (quoting Conn. Gen. Stat. § 42-110b(a). "To state a claim under CUTPA, a plaintiff must plead that she (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce." *Id.* In order "to determine whether an act or practice is unfair," Connecticut courts apply the "cigarette rule," which asks:

'(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers.

*Id.* (quoting *Harris v. Bradley Memorial Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 350, 994 A.2d 153 (2010)).

The statute of limitations for a CUTPA claim is three years. *See* Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."). "CUTPA's three-year limitation period is triggered upon the occurrence of the alleged violation, not the discovery of the alleged practice." *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000). "Connecticut courts have applied the continuing course of conduct doctrine to toll the CUTPA limitations period." *Bartold*, 2015 WL 7458504, at *5 (quoting *Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 190 (D. Conn. 2007)).

As in other instances where the doctrine applies, in order to invoke it as a basis for tolling the statute of limitations on a CUTPA claim, Connecticut courts require "evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto" as demonstrated by "either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Szynkowicz v. Bonauito-O'Hara*, 170 Conn. App. 213, 229, 154 A.3d 61 (App. Ct. 2017) (quotation marks and citation omitted). As discussed above, Plaintiffs allege that the Defendants continued to reap the profits of their illegal conduct after the images were posted. This later accumulation of allegedly ill-gotten gains, earned at the Plaintiffs' expense, is even more viable in the context of Plaintiffs' claim under CUTPA, which is designed to remedy deceptive commercial practices. It will be for the trier of fact to decide whether the Defendants subsequently profited from the original wrong within the applicable statute of limitations. *See Evanston*, 890 F.3d at 45 (noting that "[t]he continuing course of conduct doctrine is 'conspicuously fact-bound'") (citation omitted); *cf. Bartold*, 2015 WL 7458504, at *5 (denying motion to dismiss where "Plaintiff . . . alleged later wrongful acts," such as mispresenting certain loan terms and unjustifiably delaying the closing on the plaintiff's reverse mortgage, which were "related to the alleged deceptive acts occurring prior to the limitations period"). The motion to dismiss is denied as to Count Five.

### Defamation – Count Six

"At common law, to establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 319 Conn. 394, 430, 125 A.3d 920 (2015) (quotation marks and brackets

omitted).  "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Id.* at 431 (quoting *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004)).  Connecticut applies a two-year statute of limitations to defamation claims.  *See* Conn. Gen. Stat. § 52-597 ("No action for libel or slander shall be brought but within two years from the date of the act complained of.").  "The statute of limitations for a defamation claim begins on the date of publication" and "a new cause of action arises with each publication"  *Cweklinsky*, 267 Conn. at 224 (citations omitted).

The Plaintiffs have not cited, nor is the Court aware of, any instance in which a Connecticut court has applied the continuing course of conduct doctrine to toll the statute of limitations for a defamation claim.  To the contrary, "because each alleged defamatory statement constitutes a separate cause of action, Connecticut courts have declined to apply the continuing course of conduct doctrine to defamation claims."  *Britt v. Unknown Officers*, No. 3:17-CV-2158 (JCH), 2019 WL 2453763, at *4 (D. Conn. June 12, 2019) (citing, *inter alia*, *Brady*, 2015 WL 1727591, at *6).  Plaintiffs cannot invoke the doctrine as a basis for tolling the applicable statute of limitations. The question then is whether on the face of the complaint, Plaintiffs' defamation claims are time barred.  The Court concludes that they are.

When pleading a defamation claim, Connecticut courts have stated that "certainty is required in the allegations as to the defamation and as to the person defamed . . . . A complaint is insufficient to withstand dismissal for failure to state a cause of action where . . . the complaint set forth no facts of any kind indicating what defamatory statements, if any, were made, when they were made, or to whom they might have been made."  *Ramirez v. Costco Wholesale Corp.*, No. CV-116020832, 2012 WL 1959059, at *5 (Conn. Sup. Ct. May 2, 2012) (quotation marks,

brackets, and citations omitted). Here, the only instances of defamation pled by Plaintiffs with adequate particularity are those set forth in the complaint's exhibits, all of which fall outside of the two-year statute of limitations. The motion to dismiss is accordingly granted without prejudice as to the defamation claims.[4]

### Negligence/Respondeat Superior – *Count Seven*

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Archambault v. Soneco/Ne., Inc*., 287 Conn. 20, 32, 946 A.2d 839 (2008) (quotation marks and citation omitted). In the negligence count Plaintiffs allege that "Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights" and "further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices." (FAC ¶¶ 157–58.) Plaintiffs allege that "Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive." (*Id.* ¶ 159.) Citing the principle of *respondeat superior*, Plaintiffs further allege that Defendants failed to enforce appropriate procedures and policies and adequately supervise their employees to prevent the unauthorized use of Plaintiffs' images or likeness for Defendants' promotion and advertising. (*Id.* ¶¶ 155, 160.) "[U]nder the common-law principle of respondeat superior, an employer is vicariously liable for compensatory damages arising out of the

---

[4] While Plaintiffs may not replead their time-barred defamation claims, Plaintiffs are not precluded from repleading timely defamation claims that set forth the specific dates and fora on which Defendants allegedly posted Plaintiffs' images. The Court also recognizes that even if no such dates are presently known to the Plaintiffs, discovery is ongoing and may provide a factual basis for amended claims in the future.

tortious conduct of his employee when that conduct occurs during the course of the employee's employment." *Nathans v. Offerman*, 922 F. Supp. 2d 271, 275 (D. Conn. 2013) (quoting *Matthiessen v. Vanech*, 266 Conn. 822, 839, 836 A.2d 394 (2003)).

The statute of limitations for negligence claims in Connecticut provides in relevant part that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." Conn. Gen. Stat. § 52-584.[5] As the Connecticut Appellate Court has explained:

> this statute imposes two specific time requirements on plaintiffs. The first requirement, referred to as the discovery portion[,] requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered. The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of. The three year period specifies the time beyond which an action under § 52-584 is absolutely barred, and the three year period is, therefore, a statute of repose.

*Peek v. Manchester Mem'l Hosp.*, 193 Conn. App. 337, 344, 219 A.3d 421 (App. Ct. 2019) (quotation marks, ellipses, and citation omitted).

The Connecticut Supreme Court "has recognized the continuing course of conduct doctrine in many cases involving claims sounding in negligence." *Watts*, 301 Conn. at 583. When properly invoked it "applies only to the repose portion of the statute and not to the discovery portion." *Peek*, 193 Conn. App. at 344 (quotation marks omitted). As with Plaintiffs' other tort claims, Defendants' alleged continued and ongoing profiteering, occurring well after the original wrong,

---

[5] While this statute was amended and made effective October 1, 2019, after the filing of Plaintiffs' lawsuit, the amendment does not bear on the applicable limitations period discussed herein.

is sufficient to allege the application of the continuing course of conduct doctrine. The motion to dismiss is denied as to Count Seven.

### *Conversion – Count Eight*

"Conversion is an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 418, 934 A.2d 227 (2007). Connecticut applies the general three-year statute of limitations for tort actions to conversion claims. *See Stuart & Sons, L.P. v. Curtis Pub. Co*., 456 F. Supp. 2d 336, 343 (D. Conn. 2006) (citing Conn. Gen. Stat. § 52-577). There are two different types of conversion, which bear on when the statute begins to run; in the first, "possession is wrongful from the outset," and thus the statute of limitations "begins to run on the date the property was wrongfully taken." *Id.* at 344. In the second, "the possession is originally rightful, but becomes wrongful as a result of: (1) a wrongful detention; (2) a wrongful use of the property; or (3) the exercise of an unauthorized dominion over the property." *Id.*; *see also, e.g.*, *Vossbrinck*, 301 F. Supp. 3d at 388. In the case of a wrongful detention, "a conversion does not occur until the possessor refuses to return the property on demand" and thus "the statute of limitations begins to run when the demand is refused." *Stuart & Sons*, 456 F. Supp. 2d at 344. In the case of a wrongful use or unauthorized dominion, no demand is necessary and the statute instead "begins to run when a party, publicly or outwardly, exhibits wrongful use or unauthorized dominion over the property." *Id.*

Plaintiffs do not specify which of the two types of conversion they intend to raise. If the first, and Defendants obtained Plaintiffs' images unlawfully, then the statute of limitations began to run when the images were taken and necessarily predated the alleged postings on Defendants' social media pages. If the second, and Defendants' initial receipt of Plaintiffs' images was not

unlawful, then the only applicable theory would appear to be that of wrongful use, in which case the statute began to run when Defendants publicly exhibited Plaintiffs' images without their permission—*i.e.*, on the dates the images were posted on Facebook and Instagram. In either case, these events took place outside of the three-year statute of limitations. However Connecticut courts have applied the continuing course of conduct doctrine to conversion claims, *see, e.g.*, *Jarvis v. Lieder*, 117 Conn. App. 129, 148–49, 978 A.2d 106 (App. Ct. 2009), and the Court concludes that Plaintiffs have invoked the doctrine by pleading a subsequent wrong in the form of Defendants' alleged unlawful and ongoing accrual of profits from Plaintiff's images, for the reasons discussed previously. The motion to dismiss Count Eight is denied.[6]

### *Unjust Enrichment and* Quantum Meruit *– Counts Nine and Ten*

Plaintiffs' claims for unjust enrichment and *quantum meruit* are equitable in nature. *See, e.g.*, *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 451, 970 A.2d 592 (2009) ("A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.") (quotation marks and citation

---

[6] The Court notes, however, a recent decision in this District that dismissed a conversion claim premised on nearly identical facts. Observing that "[i]n Connecticut, intangible property interests have not traditionally been subject to the tort of conversion, except for those intangible property rights evidenced in a document," the court first noted that the plaintiffs could not state a legally cognizable claim based on the intangible property right in their images or likeness. *Geiger v. C&G of Groton, Inc.*, No. 3:19-CV-502 (VAB), 2019 WL 7193612, at *16 (D. Conn. Dec. 26, 2019) (quoting *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 44, 761 A.2d 1268 (2000)). Second, even if the plaintiffs had properly pled a property right in their photos or likeness, the court noted that the complaint alleged that plaintiffs licensed the images for one to three year terms but did not allege that plaintiffs owned any of the allegedly misappropriated images at the time the defendants posted them. *Id.* Finally, noting that "conversion requires the 'unauthorized assumption and exercise of the right of ownership over property belonging to another, *to the exclusion of the owner's rights*,'" the court further found that the plaintiffs failed to "allege that they can no longer use the photographs that were allegedly altered or misappropriated to include advertisements" for the defendants' strip clubs and thus did not adequately plead conversion. *Id.* (quoting *Mystic Color Lab*, 284 Conn. at 418). Here, while Plaintiffs allege that Plaintiffs were "at all relevant times . . . the exclusive owners of all right, title and interest in their Images, and have property interests thereon," (FAC ¶ 164) they do not allege that Defendants prevented Plaintiffs from using the images themselves during the operative timeframe. But because Defendants do not challenge Plaintiffs' claim on the merits, the Court does not *sua sponte* reach the issue.

omitted); *Schreiber v. Connecticut Surgical Grp., P.C.*, 96 Conn. App. 731, 737, 901 A.2d 1277 (App. Ct. 2006) ("Quantum meruit is a form of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties.") (quotation marks, alterations, and citation omitted). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *New Hartford*, 291 Conn. at 451–52 (quotation marks and citation omitted). "Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered." *Schreiber*, 96 Conn. App. at 737 (quotation marks and citation omitted).

"Statutes of limitations do not apply in a strict fashion to causes of action arising in equity." *Gov't Employees Ins. Co. v. Barros*, 184 Conn. App. 395, 399, 195 A.3d 431 (App. Ct. 2018). "Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations." *Rossman v. Morasco*, 115 Conn. App. 234, 256, 974 A.2d 1 (App. Ct. 2009) (quotation marks and citation omitted). "Instead . . . a party asserting a claim sounding in equity may be barred from seeking equitable relief by the defense of laches, which applies only if there has been an unreasonable, inexcusable and prejudicial delay in bringing suit." *Gov't Employees*, 184 Conn. App. at 400–01 (quotation marks and citation omitted).

While Defendants argue that Plaintiffs fail to explain their delay in bringing this action and assert in conclusory form that they have suffered prejudice as a result, as the Court noted

previously, "laches is a fact-based inquiry" that "courts rarely resolve . . . at the pleading stage." *CSL Silicones Inc.*, 170 F. Supp. 3d at 317 n.11; *accord Lynwood Place, LLC v. Sandy Hook Hydro, LLC*, 150 Conn. App. 682, 691, 92 A.3d 996 (App. Ct. 2014) ("Whether a plaintiff is guilty of laches is a question of fact for the trier and not one to be answered by this court unless the subordinate facts found make such conclusion inevitable as a matter of law") (quotation marks and citation omitted). The motion to dismiss Counts Nine and Ten is accordingly denied.[7]

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted as to the defamation count, without prejudice. It is denied in all other respects.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of February 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that Plaintiffs' allegations, including that they were never "contacted by any Defendant . . . to request the use of any of Plaintiffs' images" (FAC ¶ 83), tend to run counter to a theory supporting recovery in *quantum meruit*, which is "available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered." *Parnoff v. Mooney*, 132 Conn. App. 512, 519, 35 A.3d 283 (App. Ct. 2011) (quotation marks and citation omitted); *see also Schreiber*, 96 Conn. App. at 737 (explaining that a plaintiff "must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered") (quotation marks and citation omitted); *accord Geiger*, 2019 WL 7193612, at *17–*18 (dismissing similar claim because "there is no basis for contending that Plaintiffs and Defendants entered into an implied agreement which would now require Defendants to compensate Plaintiffs for their services" where Plaintiffs alleged that "they were never contacted by any Defendant . . . to request the use of any of Plaintiffs' images.") (quotation marks and alterations omitted). Again, however, because Defendants do not argue for dismissal on this basis, the Court will permit this claim to proceed at this stage.